CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 27 2016
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:12CR00013 |
| | ) | (Civil Action No. 7:15CV80834) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHRISTOPHER JAMES MILLS, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Christopher James Mills, a federal inmate, has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, and Mills has responded, making this matter ripe for consideration. Upon review of the record, the court concludes that Mills' claims lack merit and the government's motion to dismiss must be granted.

I.

On February 16, 2012, a grand jury returned an indictment charging Mills with conspiring to distribute and possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectible amount of cocaine, in violation of 21 U.S.C. § 846. This charge stemmed from an investigation into cocaine trafficking in and around Roanoke, Virginia.

Mills' first court-appointed attorney obtained two trial continuances, but moved to withdraw on June 18, 2012, due to trial strategy differences and strained relations. (Mot. to Withdraw at 1, ECF No. 26.) Mills' second court-appointed attorney obtained a third trial continuance, but also moved to withdraw on October 3, 2012, due to irreconcilable differences. (Mot. to Withdraw at 1, ECF No. 43.) Mills' third court-appointed attorney pursued multiple pre-trial motions. At a motions hearing, defense counsel argued that the evidence presented at trial should be limited to powder cocaine—and that all evidence of crack cocaine should be

excluded—because the indictment refers to a "cocaine" distribution conspiracy. (Mot. Hr'g at 6, ECF No. 81.) The court concluded that evidence of crack cocaine sales would be admissible but that the defense could raise a multiple conspiracy defense to try and cast doubt on whether the charged conspiracy actually existed. (Id. at 25.) Counsel also argued that the timeframe of the conspiracy had recently shifted from the late 1990s to the early 1990s, which acted to constructively amend the indictment. (Id. at 21.) The court held that the government was not seeking to amend the indictment but rather "fleshing out" the facts, which was permissible as the indictment did not establish a starting date for the conspiracy. (Id. at 22.) In addition, counsel requested that any evidence that Mills may have been involved in a series of robberies and home invasions of other drug dealers be excluded from trial as prejudicial. This evidence dealt with Mills' relationship with George Fitzgerald, who had previously pleaded guilty to running a robbery scheme in which Fitzgerald targeted drug dealers. The court determined that the robbery evidence would be allowed to the extent that it showed with whom Mills associated and when he ended the conspiracy. (Id. at 15, 24.)

Prior to trial, the government filed a notice of enhanced punishment, pursuant to 21 U.S.C. § 851, based on Mills' prior state court conviction for distribution of cocaine in Roanoke. Pursuant to this notice, Mills was subject to a mandatory minimum sentence of 240 months' incarceration.

Mills proceeded to trial on October 15, 2012. The government called four individuals to testify about buying drugs from and selling drugs to Mills. One individual, Edison James Alberty, testified that he sold cocaine to Mills in large quantities, totaling between fifteen and twenty-five kilograms over the course of their relationship. (Trial Tr. at 61, ECF No. 82) Alberty eventually started cooperating with the police and recorded a telephone conversation he

2

had with Mills in which he arranged to sell Mills two kilograms of cocaine in March 2007. (Id. at 62.) Police stopped Mills on the way to this controlled buy and confiscated approximately $48,000 from him and his vehicle. The police did not arrest Mills at that time. Following the seizure of his car and money, Mills' drug contacts refused to sell cocaine to him, thinking that he was involved with the police, so Mills' drug business "suffered." (Id. at 81.)

Two other witnesses, Louis Delbert Brown, Jr. and Travis Lane Entsminger, testified that they had been friends with Mills from the time that they were children and originally got him involved in dealing crack cocaine. Defense counsel objected to this line of questioning asserting it was evidence of a separate conspiracy to sell and distribute crack cocaine, whereas the indictment charged Mills with conspiracy to distribute cocaine powder. The court overruled the objection but held a bench conference regarding the extent of the evidence that it would allow the government to present regarding a crack cocaine conspiracy. (Id. at 168-69.) The court concluded that the government could present evidence of crack cocaine sales only to show how Mills became involved in selling drugs, but not to establish a separate crack cocaine distribution conspiracy. (Id. at 168.)

After the government rested, the defense did not present any evidence. Defense counsel made a motion for judgment of acquittal, arguing that the statute of limitations applied because much of the evidence pre-dated 2007; the government had not presented sufficient evidence to establish the existence of a cocaine powder conspiracy; and the government had attempted to show multiple conspiracies existed, without focusing on the cocaine powder conspiracy for which Mills was charged. The court denied the defense motion, concluding that if the jury were to credit certain testimony, it could find that Mills was engaged in a cocaine powder distribution conspiracy that continued after 2007. (Trial Tr. at 234, ECF No. 83.) In addition, the court

3

concluded that whether or not the evidence presented could support a conviction for other types of conspiracies was immaterial, as long as the evidence proved that Mills was involved in the charged conspiracy. (Id. at 232-33.) The jury returned a guilty verdict.

Mills retained counsel for sentencing. Mills' presentence investigation report ("PSR") recommended a total offense level of 36 and a criminal history category of III, resulting in a guidelines range of 235 to 293 months' imprisonment. (PSR ¶ 56, ECF No. 104.) However, Mills faced a mandatory minimum sentence of 20 years and a maximum term of life in prison under 21 U.S.C. § 841(b)(1)(A) based on his prior felony drug conviction. Accordingly, the PSR recommended an increase to the beginning of the applicable guideline range to 240 to 293 months.

Mills' counsel filed objections to the PSR, arguing: that Mills should have received credit for acceptance of responsibility because even though he went to trial, he did so to preserve legal issues; that the drug weight attributable to Mills should have been less; and that evidence of a home invasion should not have been included in the PSR. (Id. at 14-15.) At the sentencing hearing, the court overruled the objections and adopted the PSR. (Sent. Tr. at 60, ECF No. 109.) The court sentenced Mills to 254 months' incarceration. (Id. at 69.)

Mills unsuccessfully appealed his conviction and sentence on multiple grounds. United States v. Mills, 555 F. App'x 241, 244 (4th Cir. 2014). On April 7, 2015, pursuant to Amendment 782 of the United States Sentencing Guidelines and 18 U.S.C. § 3582(c)(2), the court reduced Mill's sentence from 254 months to the statutorily required 240 months' incarceration.

In his § 2255 motion, Mills raises multiple ineffective assistance claims, alleging that: (1) trial counsel failed to adequately prepare for trial; (2) trial counsel failed to investigate the search

4

and seizure of Mills' cash and automobile and the twenty-year time-frame of the conspiracy; (3) trial counsel had a conflict of interest that he failed to disclose; (4) trial counsel failed to argue multiple conspiracies existed; (5) sentencing counsel failed to object to the § 851 enhancement because it was relevant conduct; and (6) appellate counsel failed to object to the drug weight determination. Mills also alleges due process violations, claiming that the government failed to disclose alleged exculpatory statements by George Fitzgerald and alleged exculpatory information about Eddie Alberty.

## II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Mills bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

### A. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to establish a viable ineffective assistance claim, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669. When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is

5

judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." Id.

To satisfy the prejudice prong of Stickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

*1. Failure to Prepare for Trial*

First, Mills asserts that trial counsel was unprepared to go to trial because he was appointed twelve days before it began. Mills had two appointed lawyers before his last trial counsel was appointed, both of whom withdrew from representing him because of irreconcilable differences and difficulty in communicating with him. In addition, his trial had been postponed on three separate occasions. Mills claims that trial counsel met with him only one time prior to the beginning of trial and should have requested a continuance. Although trial counsel had a limited amount of time in which to prepare for trial, he assured the court at a motions hearing that he was ready to proceed. He noted that he had received discovery "a week ago" and had "had plenty of time to digest that discovery." (Mot. H'rg Tr. at 3, ECF No. 81.) In addition, contrary to Mills' assertion, trial counsel stated that they "had met repeatedly," and that Mills "return[ed] [his] calls." (Id. at 29.) When the court asked whether counsel expected to try the case as scheduled, he answered, "absolutely." (Id.)

In his affidavit attached to the motion to dismiss, counsel explained that his decision not to seek a continuance was a tactical one, which he discussed with Mills. He stated that the government had indicated that it might seek a superseding indictment with additional charges in the event of another postponement. (Ex. 2 Response Br. at 3, ECF No. 133-2.)

6

Counsel is afforded a "wide latitude in deciding how best to represent a client." Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003). In particular, courts must give deference to counsel's tactical decisions. Id. at 6. It is clear from counsel's affidavit as well as the record that counsel made a tactical decision to proceed to trial.

Moreover, Mills does not present any viable reason that would have necessitated a continuance. First, he asserts that counsel should have asked for a continuance because the government indicated at the motions hearing that it would introduce evidence of crack cocaine distribution, in addition to the charged cocaine powder conspiracy. However, counsel objected to the admission of evidence of crack cocaine sales, both at the motions hearing and at trial. (Mot. Hr'g Tr. at 10, ECF No. 81; Trial Tr. at 167, ECF No. 82.) Following the objection at trial, the court made clear that evidence of crack cocaine sales would be allowed to show how Mills became involved in selling drugs, but not to establish a separate crack cocaine distribution conspiracy. (Tr. Trans. at 168, ECF No. 82.) As a result, the government stopped its line of questioning regarding crack cocaine sales, and the court and counsel agreed that the charge to the jury would involve only powder cocaine transactions. (Tr. Trans. at 239, ECF No. 83.) Accordingly, Mills has not established that counsel's conduct was deficient with regard to the admission of crack cocaine-related evidence.

Mills also argues that a continuance was necessary because it became clear at the motions hearing that the government's evidence extended the conspiracy timeline by ten years to begin in the early 1990s. Mills' counsel also objected to the timeline, asserting that the indictment was vague and that the government had changed the beginning of the conspiracy, thereby effectively amending the indictment. (Mot. hr'g at 10, 22 ECF No. 81.) The court rejected this argument, concluding that the government appeared to be "fleshing out some of the facts" of the case. (Id.

7

Case 7:12-cr-00013-GEC-RSB   Document 140   Filed 05/27/16   Page 7 of 15   Pageid#: 993

at 22.) The indictment itself states that the conspiracy started at "a time unknown to the Grand Jury" and continued through January of 2012. Indictments may allege conspiracies without a set beginning date as long as the time frame is not a substantive element of the offense, as is the case here. United States v. Brooks, 524 F.3d 549, 564 (4th Cir. 2008) (concluding that an indictment that alleged that conduct occurred "at at time unknown to the Grand Jury, but beginning at least in January 1994 was sufficient to allow the government to present evidence prior to 1994) (emphasis in original). The indictment gave Mills adequate notice of the charges against him. United States v. Queen, 132 F.3d 991, 999 (4th Cir. 1997). Mills has not pointed to any action that counsel should have taken but failed to do. Accordingly, Mills has not shown that he was prejudiced by counsel's actions.

Finally, Mill's argument is unavailing because he did not raise the issue of a continuance either with the court or counsel before trial. On the morning that his trial began, the court asked Mills whether he had had adequate time to discuss with counsel the plea options available to him. (Trial Tran. at 16, ECF No. 18.) Mills answered, "Yes, sir." (Id.) Mills then affirmed that he believed going to trial was "the best course" for him. (Id. at 18.) He did not evince any hesitation or unhappiness about proceeding to trial. Accordingly, Mills has not established that counsel provided deficient representation by electing not to request another continuance, or that he suffered any prejudice from counsel's decision. Strickland, 466 U.S. at 687.

2. *Failure to Engage in Pretrial Investigation*

Mills also argues that counsel provided deficient performance by failing to investigate the seizure of Mills' automobile and $48,000 in cash in 2007 and the twenty-year span of the conspiracy. This argument, too, lacks merit.

8

First, counsel did investigate the automobile search and seizure. As counsel explained in court prior to trial, "We haven't filed a motion to suppress the stop because we don't think there was any non-frivolous basis for doing so. [Mills] was driving erratically—they say that's why he was stopped—very erratically, tailgating people." (Trial Tran. at 6. ECF No. 82.) In his affidavit, trial counsel stated that he reviewed the police reports regarding the traffic stop, researched the applicable case law, and determined that he could not make a successful Fourth Amendment challenge. (Ex. 3 Gov't Mot. at 2, ECF No. 133-3.) Counsel's assessment of a case and tactical decisions must be given proper deference. Strickland, 466 U.S. at 689. Moreover, counsel's assessment appears to be accurate. At the time of the traffic stop, officers knew that Mills was en route to buy two kilograms of cocaine from a confidential informant. Mills' erratic driving provided probable cause and an additional legitimate basis for pulling him over. See Whren v. United States, 417 U.S. 806, 819 (1996). As is clear from the record, trial counsel adequately investigated Mills' traffic stop.

Mills next argues that counsel failed to investigate the scope of the conspiracy. Counsel affirmed in court that he had an ample opportunity to review the discovery in this case. Mills does not identify any additional evidence that counsel failed to unearth or pursue, nor does the record suggest that any such evidence exists. General allegations that counsel failed to fully investigate are insufficient to support a finding of error. United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (noting that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court") (internal quotation omitted); see also Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (noting that conclusory allegations that counsel failed adequately to investigate, without factual support, are insufficient to raise a constitutional issue or require an evidentiary hearing), overruled on other grounds by

9

Case 7:12-cr-00013-GEC-RSB    Document 140    Filed 05/27/16    Page 9 of 15    Pageid#: 995

Gray v. Netherland, 518 U.S. 152, 165-66 (1996). Accordingly, Mills has not established deficient performance or resulting prejudice due to counsel's pretrial investigation. Strickland, 466 U.S. at 687.

### 3. *Conflict of Interest*

Next, Mills argues that trial counsel did not disclose that he had previously represented Ronnie Oliver, a defendant in a separate case, who pleaded guilty to a robbery that was part of a bigger series of home invasions and robberies of drug dealers. These robberies were the subject of a motion in limine at Mills' motions hearing. Mills asserts that counsel's failure to disclose his former representation of Oliver constituted a conflict of interest. In order to prevail on a conflict of interest claim, a defendant must establish that an actual conflict of interest existed and that it adversely affected counsel's performance. Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Here, Mills cannot establish either required element. He fails to provide any specific facts that would suggest counsel's prior representation of Oliver affected his ability to zealously represent Mills in this case. Oliver pleaded guilty and was sentenced before Mills proceeded to trial. The robbery for which Oliver pleaded guilty was not raised at Mills' trial and there is no evidence that Mills was involved in that robbery. Because Mills does not provide any particularized facts regarding where counsel's alleged conflict lay, or how counsel's defense strategy in this case would have been different had he not previously represented Mills, this claim lacks merit. See Mickens v. Taylor, 240 F.3d 348, 360 (4th Cir. 2001) (requiring defendants to present specific evidence of a conflict of interest and adverse effect).

### 4. *Failure to Raise Multiple Conspiracy Defense*

Next, Mills asserts that trial counsel failed to argue that multiple conspiracies existed, and that the conspiracy stopped while Mills was incarcerated in 1997. However, the record makes

10

clear that counsel raised, and the court considered, the issue of multiple conspiracies. Specifically, counsel argued at both the motions hearing and at trial that the government was attempting to collapse two separate conspiracies—distribution of crack cocaine and distribution of cocaine powder—into an indictment that alleged only cocaine distribution. Accordingly, the jury was specifically instructed on multiple conspiracies: "In this case, one of the issues you must consider and decide is whether the defendant was a member of a particular—of the particular conspiracy charged in the indictment, as opposed to some other uncharged conspiracy and, if so, the temporal duration of that conspiracy." (Jury Charge at 65, ECF No. 98.)

There was an obvious strategic reason for counsel not to present evidence to the jury that Mills had been incarcerated in 1997. In fact, trial counsel made a motion in limine to exclude all evidence of Mills' prior criminal record as prejudicial, which the court granted other than for impeachment purposes. Moreover, it is unclear how presentation of this evidence to the jury would have benefited Mills' conspiracy argument. Assuming that there was an interruption in the conspiracy in 1997, the record establishes that the conspiracy resumed. The government presented multiple witnesses who testified that they were involved in buying and selling cocaine to and from Mills up until 2012. To the extent that Mills is also arguing that the government presented evidence of two separate conspiracies—one dealing with crack cocaine and the other with cocaine powder—his claim fails on the record. As stated, the court expressly instructed the jury to consider the possibility of multiple conspiracies. Ultimately, the jury concluded that the government had presented enough evidence of a cocaine powder distribution conspiracy to support a conviction, regardless of the limited crack cocaine evidence also presented at trial. Accordingly, Mills fails to establish any deficient performance or resulting prejudice related to possible multiple conspiracies or the conspiracy time line. <u>Strickland</u>, 466 U.S. 687.

11

### 5. *Failure to Object to § 851 Enhancement*

Next, Mills argues that sentencing counsel erred because he failed to challenge the enhancement to his sentence pursuant to 21 U.S.C. § 851. A person convicted of conspiracy to distribute more than five kilograms of cocaine powder faces a statutory minimum sentence of ten years to life in prison. 21 U.S.C. § 841(b)(1)(A). However, if a defendant has previously been convicted of a felony drug offense, the defendant faces an increased statutory penalty range of twenty years to life in prison. Id. Because Mills had a prior felony drug conviction, his statutory mandatory minimum sentence increased from ten to twenty years.

Mills asserts that his 1997 felony conviction for cocaine distribution should not have been used to enhance his sentence because it constituted relevant conduct to the instant offense. This argument is foreclosed by applicable Fourth Circuit precedent. "When a defendant is convicted of a drug conspiracy under 21 U.S.C. § 846, prior felony drug convictions that fall within the conspiracy period may be used to enhance the defendant's sentence if the conspiracy continued after his earlier convictions were final." United States v. Smith, 451 F.3d 209, 224-25 (4th Cir. 2006). Evidence presented at trial indicated that the conspiracy extended far beyond 1997. Because the court properly applied the sentencing enhancement pursuant to 21 U.S.C. § 851, Mills cannot establish that his counsel was deficient for failing to object to it or that he suffered any prejudice. Strickland, 466 U.S. 687.

### 6. *Drug Weight Determination*

Mills' final ineffective assistance of counsel claim is that his sentence is constitutionally deficient because the court, rather than the jury, decided the drug weight attributable to him, and appellate counsel failed to raise the issue on appeal. This argument, too, is unavailing.

12

The Supreme Court has determined that any fact that increases the statutory mandatory minimum is an element of the offense and must be submitted to the jury and found beyond a reasonable doubt. Alleyne v. United States, —U.S. —, 133 S.Ct. 2151, 2155 (2013). Alleyne, however, is of no help to Mills. The indictment charged him with conspiracy to distribute five kilograms or more of cocaine. The jury received a verdict form that required it to determine the drug amount involved in the conspiracy, specifically: whether Mills was guilty of conspiracy to distribute five kilograms or more of cocaine powder, 500 grams or more of cocaine powder, or less than 500 grams of cocaine powder. The jury found beyond a reasonable doubt that Mills was guilty of conspiracy to distribute five kilograms or more of cocaine powder. No other sentencing factors had an impact on the statutory sentencing range applicable to Mills' drug offense. See id. at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."). Because the jury did determine the drug weight attributable to Mills, his ineffective assistance claim on this issue lacks merit.

### B. Due Process Clause Violations Claims

Finally, Mills argues that the government failed to disclose exculpatory evidence in violation of his due process rights. The government must disclose requested exculpatory information to a defendant. Brady v. Maryland, 373 U.S. 83, 87 (1963). However, even when the government impermissibly withholds exculpatory evidence, a constitutional violation occurs only when the undisclosed evidence was material. United States v. Bagley, 473 U.S. 667, 682 (1985). Therefore, a court may reverse an underlying conviction based on a Brady violation

"only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id.

First, Mills argues that the government withheld evidence that George Fitzgerald, the person who initiated the home invasions and robberies of drug dealers that was the subject of a motion in limine at Mills' motions hearing, stated that Mills was not involved in the robberies. Statements that Mills was not involved in a robbery scheme were not material. Mills was charged and found guilty of conspiracy to distribute cocaine powder. Evidence of home invasions and robberies at Mills trial was almost non-existent. Only one witness—Scott Hayth—discussed a robbery at trial. He testified that he sold cocaine to Mills, told Mills he was planning to go home, and was robbed at his home shortly thereafter. (Trial Tr. at 151, ECF No. 82.) Hayth testified that three men whom he did not know robbed him. The government also elicited testimony from a different witness that Mills knew a man named Fitzgerald, without explaining that Fitzgerald was the robbery ringleader. Defense counsel objected and the government did not pursue that line of questioning. (Trial Tr. at 106-07, ECF No. 82.) Fitzgerald never testified at Mills' trial.[1] As the court succinctly put it: "The only thing mentioned is that Mills knew Fitzgerald. . . . So to me, there's no linkage [between Mills and Fitzgerald or between Mills and the robberies]. It's so tenuous to be no harm to you whatsoever." (Tr. Trans. at 195, ECF No. 83.) Therefore, Fitzgerald's statements regarding Mills' connection—or lack thereof—to robberies, were not material to the charged crime or the evidence presented at trial. Because there was no evidence presented at trial connecting Mills to the robberies committed by Fitzgerald, Fitzgerald's undisclosed statements would not have influenced the outcome of Mill's trial. Thus Mills' Brady claim lacks merit.

---

[1] Fitzgerald did testify at Mills' sentencing hearing that Mills never told him whom to rob. (Sent. Tr. at 23, ECF No. 109.) Fitzgerald's testimony at sentencing does not affect the materiality of those statements for trial purposes because Mills was not tied to the robberies at trial.

Finally, Mills argues that the government failed to disclose exculpatory evidence regarding Eddie Alberty, the confidential informant who set up the drug buy with Mills that resulted in the seizure of Mills' automobile and cash. Mills claims that in the forfeiture paperwork, an agent falsely stated that Alberty met Mills while they were in prison, although Alberty claimed that the two met through a friend at a halfway house. Mills' argument is essentially an attempt to impeach Alberty's credibility. Mills fails to show, however, that the government withheld this alleged impeachment information. In fact, Mills received a copy of the forfeiture paperwork after his possessions were seized and, again, as part of pretrial discovery. Because Mills fails to establish nondisclosure of material evidence here, this Brady claim also fails.

### III.

For the reasons stated, the court will grant the government's motion to dismiss. An appropriate order will be entered this day.

**ENTER:** This 27th day of May, 2016.

*/s/ Glen Conrad*
Chief United States District Judge